United States Court of Appeals
Fifth Circuit

**F I L E D**

**April 14, 2004**

Charles R. Fulbruge III
Clerk

**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 03-30026

STEVEN HENRY ADAMS, for Himself and as Representative of Certain Underwriters at Lloyd's; INDEMNITY MARINE ASSURANCE COMPANY LTD; THE YORKSHIRE INSURANCE COMPANY LTD; COMMERCIAL UNION ASSURANCE COMPANY PLC; PHOENIX ASSURANCE PLC; CORNHILL INSURANCE PLC; NORWICH UNION FIRE INSURANCE SOCIETY LTD; MARITIME INSURANCE COMPANY LTD.; THE NORTHERN ASSURANCE COMPANY, LTD; SKANDIA UK INSURANCE PLC; OCEAN MARINE INSURANCE COMPANY; FOLKSAM INTERNATIONAL INSURANCE COMPANY (UK) LTD; SCOTTISH LION INSURANCE COMPANY LTD; WURTTEMBERGISCHE FEUERVERSICHERUNG AG; SPHERE DRAKE INSURANCE GROUP PLC; DAI-TOKYO INSURANCE CO UK LTD

                                Plaintiffs-Appellees-Cross Appellants

                        VERSUS

            UNIONE MEDITERRANEA DI SICURTA; ET AL

                                                        Defendants

        AK STEEL CORP, formerly known as, Armco Steel Company LP

                                        Defendant-Appellant

                                and

UMS GENERALI MARINE SPA, formerly known as Unione Mediterranea Di Sicurta

                Defendant-Appellant-Appellee-Cross Appellee

        Appeals from the United States District Court
            For the Eastern District of Louisiana

Before DAVIS, WIENER and STEWART Circuit Judges.

W. EUGENE DAVIS, Circuit Judge:

This suit arises from the sinking of two barges in the Mississippi River and the loss of 158 slabs of steel aboard those barges. The primary issues in this appeal relate to arguments between two co-insurers of the lost steel cargo over the amount of the loss each should bear. Defendant insurer Unione Mediterranea di Sicurta ("UMS") also challenges personal jurisdiction and venue. Issues are also presented challenging the propriety of the district court's order permitting the insurers to recover in their subrogation action against A.K. Steel Corp. ("AK Steel") for converting the salvaged steel. We AFFIRM in part, VACATE in part, and REMAND this case to the district court.

I.

The facts of this case have been set out in detail in the opinion from the earlier appeal to this court, *Adams v. Unione Mediterranea Di Sicurta*, 220 F.3d 659, 664-67 (5th Cir. 2000) ("*Adams I*"). The background facts will be summarized here to the extent necessary to  understand the issues in the present appeal.

On October 16, 1993, while en route from New Orleans to Cincinnati, two Canal Barge Company barges carrying 158 slabs of steel cargo broke away from their flotilla and sank in the Mississippi river. The loss occurred during the final leg of a carriage of 1,290 steel slabs that began in Italy. The owner of

the steel slabs was Duferco SA ("Duferco"), a Swiss company, which had agreed to ship the steel to AK Steel, an Ohio Company. Plaintiff underwriters Steven Henry Adams et al. ("Adams") and UMS, an Italian insurer, concurrently insured the steel cargo under separate marine cargo policies. Adams insured the steel through a cargo policy originally issued to Canal Barge Co. Ltd., with Duferco named as an additional insured. Duferco was separately insured under an open cargo policy issued by UMS. The Adams policy carried a policy limit of $5 million; the UMS policy carried a limit of $20 million per shipment. The value of the cargo was $7,580,000. Duferco and Adams ultimately agreed that the value of the lost steel was $986,352.41.

Once the two barges sank, Duferco filed a claim with UMS for the loss. After attempts by UMS and Duferco to salvage the sunken cargo failed, UMS denied Duferco's claim. Duferco then pursued its claim against Adams and abandoned the sunken cargo to the London underwriter. Meanwhile a professional salvage company, American Eagle Marine, Inc. ("American Eagle") attempted to salvage the lost cargo believing it to have been abandoned in its entirety. American Eagle successfully salvaged 127 of the sunken steel slabs and sold them to AK Steel for a net profit of $190,975.68.

Plaintiff Adams initially brought this action in June 1994 seeking a declaratory judgment: (1) identifying whom it should pay for the loss of the cargo under their cargo policy with Canal Barge; (2) that UMS was obligated under its open cargo policy with

3

Duferco to contribute to payment for the loss; and (3) that Plaintiffs were obligated to pay only their proportionate share of the loss. Plaintiffs named as defendants, among others, Canal Barge, UMS, and Duferco.[1]

The district court held that Plaintiffs could not recover in a contribution action against UMS for any potential share of the losses without first fully compensating Duferco for the loss. Plaintiffs then paid Duferco $986,352.41 for the loss and obtained an assignment of whatever rights Duferco had against UMS and other potential tortfeasors.

Plaintiffs later discovered a successful salvage of 127 of the sunken steel slabs by American Eagle and AK Steel. Adams demanded that American Eagle and AK Steel return the cargo or pay its value. When the two companies refused to do either Plaintiffs amended their petition to assert a claim against AK Steel and American Eagle for the value of the converted steel. UMS then cross-claimed against AK Steel and American Eagle for its share of the value of the steel.[2]

---

[1]"Plaintiffs named as defendants Ilva, the manufacturer of the steel; Duferco; Canal Barge; UMS; and Duferco Steel, Inc., an American sister company to Duferco. The court voluntarily dismissed Ilva, Duferco, Duferco Steel, Inc., Canal Barge and A.K. Steel from this initial action at various times. The Plaintiffs later made A.K. Steel a co-defendant in the action for conversion of the steel." *Adams I*, 220 F.3d at 665. Only the Plaintiffs (Adams, *et al.*), UMS, and AK Steel remain as parties in this suit.

[2]American Eagle filed a bankruptcy petition during the pendency of this case and has not participated in this appeal.

4

UMS filed pretrial motions to dismiss for lack of personal jurisdiction and improper forum. The district court rejected UMS's motions. The district court granted Adams motion for partial summary judgment regarding the apportionment of Duferco's loss between the two insurers, Adams and UMS. The court then proceeded with a bench trial. At the conclusion of the trial the district court denied UMS's coverage defenses and found that UMS was required to contribute *pro rata* with Adams for the loss according to their respective policy limits. The court then awarded Adams 80% of the approximately $900,000 it had paid out to Duferco. The district court further found that American Eagle and AK Steel had converted the steel and therefore awarded Adams 20% and UMS 80% of the $190,975.68 in value that AK Steel and American Eagle realized from the salvaged steel after paying the cost of savlage.

UMS appealed the district court judgment objecting to the rulings on personal jurisdiction and venue as well as the apportionment of liability between insurers. Adams cross appealed arguing that UMS was not entitled to an award from AK Steel without having paid its portion of the Duferco loss and that UMS owed Adams a portion of the attorney's fees it paid to bring the case against AK Steel and American Eagle. AK Steel appealed the district court's judgment against it. This Court addressed primarily the jurisdictional issues and remanded for further proceedings only on those issues. On remand the district court found sufficient

contacts with Louisiana to justify the exercise of jurisdiction and again entered a judgment.  UMS appealed.

In the current appeal UMS challenges the district court's rulings on jurisdiction, venue, and apportionment of the liability for Duferco's loss.  Adams again challenges the district court's order granting UMS a *pro rata* portion of the award against AK Steel, and the refusal to award attorney's fees.  AK Steel challenges the district court's award of damages to UMS, arguing that UMS is unable to sue its additional insured, AK Steel.  We address these separate challenges in turn.

## II.

UMS challenges first the district court's finding that it has sufficient contacts with Louisiana to support specific and general personal jurisdiction.  UMS argues that neither the coverage of this specific shipment of steel nor the coverage of prior shipments through Louisiana provide the necessary minimum contacts to support personal jurisdiction.

The Court reviews *de novo* the district court's determination that its exercise of personal jurisdiction over a non-resident defendant is proper.  *Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 378 (5th Cir. 2002).  When, as in the instant case, "the district court decides the motion to dismiss without holding an evidentiary hearing, [the plaintiff] must make only a *prima facie*

6

showing of the facts on which jurisdiction is predicated." *Id.* In determining whether that *prima facie* case exists, we "must accept as true [the plaintiff's] 'uncontroverted allegations and resolve in [his] favor all conflicts between the [jurisdictional] facts contained in the parties' affidavits and other documentation.'" *Id.* (quoting *Kelly v. Syria Shell Petroleum Dev. B.V.*, 213 F.3d 841, 854 (5th Cir. 2000)); *see also* 5A Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure*, § 1351 (2d ed. 1990).

The district court found both specific and general personal jurisdiction in this case. *See Adams v. Unione Mediterranea di Sicurta*, 234 F. Supp. 2d, 614, 621-25 (E.D. La. 2002). The district court also suggested that jurisdiction might be available under Fed. R. Civ. P. 4(k)(2). *Id.* at 625-26.

Rule 4(k)(2) provides for service of process and personal jurisdiction in any district court for cases arising under federal law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state:

> If the exercise of jurisdiction is consistent with the Constitution and laws of the United States, serving a summons or filing a waiver of service is also effective, with respect to claims arising under federal law, to establish personal jurisdiction over the person of any defendant who is not subject to the jurisdiction of the courts of general jurisdiction of any state.

Fed. R. Civ. P. 4(k)(2). The Rule was enacted to fill an important gap in the jurisdiction of federal courts in cases arising under

7

federal law:

> Thus, there was gap in the courts' jurisdiction: while a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns, if she had insufficient contacts with any single state, she would not be amenable to service by a federal court sitting in that state. . . . Rule 4(k)(2) was adopted in response to *this* problem of a gap in the courts' jurisdiction . . . .

*World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 721-22 (5th Cir. 1996).[3]

Before examining UMS contacts with the United States as a whole, we first consider the requirement of the last sentence of Rule 4(k)(2) that it only applies if the defendant is not subject to jurisdiction in any state. We agree with the Seventh Circuit, that a piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states is not necessary. Rather, so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction. *See, e.g.*, *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001) ("If . . . the defendant contends that he cannot be sued in the forum state and refuses to identify any other where suit is possible, then the federal court is entitled to use Rule 4(k)(2)."). In this case UMS contested the transfer of this case to New York where plaintiff believed jurisdiction existed, arguing

---

[3]Rule 4(k)(2) can be applied in admiralty actions such as this case because admiralty cases arise under federal law. *World Tanker*, 99 F.3d at 723.

8

that there was no personal jurisdiction in New York. *See* UMS Mem. in Opp. to Mot. to Transfer, May 29, 2001, at 8-10. Furthermore UMS has generally challenged the existence of minimum contacts with the United States as a whole. *See* UMS Mem. Supp. Mot. to Dismiss for Lack of Pers. Jur., June 26, 2001, at 4-6. Because UMS has not offered other venues in this country where personal jurisdiction would attach and argues that it cannot be sued in the United States, the last sentence of 4(k)(2) does not preclude application of this rule.

In applying Rule 4(K)(2) the Court must determine whether the defendant has sufficient ties to the United States as a whole to satisfy constitutional due process concerns. *See World Tanker*, 99 F.3d at 723. The record demonstrates that UMS has extensive contacts with the United States.

UMS has paid claims to numerous U.S. companies, 155 in all from 1991 to 1994. The defendant insurer has covered numerous other U.S. companies which made no claims. UMS has insured hundreds of shipments to the United States. Specifically records produced by UMS and Duferco show that UMS insured approximately 260 shipments to the United States between 1989 and 1995 for Duferco alone; 138 of these Duferco shipments to the United States made between 1991 and 1994 were valued at over $130 million.

Moreover, UMS used and paid a number of individuals in the United States as claims adjusters, surveyors, investigators and

other representatives to enable it to conduct business in this country.[4]

Given the volume of activity, we have no difficulty concluding that UMS has continuous and systematic contacts with the United States as a whole. *See Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984); *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It was foreseeable that suit in U.S. courts would result from these business contacts. Defendant was well aware of the shipments to the United States and in fact enabled the prosecution of claims in the United States by providing claims agents and surveyors here. *See Puerto Rico v. SS Zoe Colocotroni*, 628 F.2d 652, 670 (1st Cir. 1980). Thus, subjecting UMS to suit here does not offend notions of fair play and substantial justice.

Because we conclude that our exercise of jurisdiction is clearer and more straightforward under Rule 4(k)(2) than under Louisiana law, we affirm the district court's jurisdictional ruling on this alternate basis. *See Chiu v. Plano Ind. Sch. Dist.*, 339 F.3d 273, 283 (5th Cir. 2003) ("This Court may affirm on grounds other than those relied upon by the district court.").

III.

---

[4]These facts, among others, were provided by AK Steel in its Supplemental Memorandum Regarding Personal Jurisdiction, Aug. 23, 2002, at 22-25. These facts have not been contested by UMS.

A.

UMS argues next that the district court erred in denying their motion to dismiss for improper venue. UMS complains that the district court should have enforced the forum selection clause contained in the insurance contract between UMS and Duferco which provides as follows:

**Competent Court**

Article 16. The competent Court, at the choice of the Plaintiff party, is exclusively that of the Legal Authority of the place at which the Insurer or the Agency to which the Policy has been allocated or at which the contract has been concluded, has its management.

In denying the motion to dismiss for lack of venue the district court held that Adams's claim against UMS was a contribution action and not a subrogation action. As such Adams did not stand in Duferco's shoes and would not be bound by the forum selection clause in the agreement to which Adams was not a party:

If Plaintiffs' suit was based on its subrogation rights, Plaintiffs would be bound by the forum selection clause. Plaintiffs seek contribution from UMS as a co-insurer. The subrogation agreement obtained from Duferco does not transform the nature of their claims against UMS into subrogation claims; rather the subrogation agreement folds into the contribution claim.

Dist. Ct. Op., May 14, 1997, at 4.

"Under the general principles of contract law, it is axiomatic that courts cannot bind a non-party to a contract, because that party never agreed to the terms set forth therein." *EEOC v. Frank's Nursery & Crafts, Inc.*, 177 F.3d 448, 460 (6th Cir. 1999);

11

*see also EEOC v. Waffle House, Inc.*, 534 U.S. 279, 294 (2002) ("It goes without saying that a contract cannot bind a nonparty."). Thus, under this well recognized general rule, because Adams is not a party to the UMS-Duferco contract he is not bound by the forum selection clause in the UMS policy.

UMS argues that under American, English, or Italian law an insurer who sues a co-insurer for contribution is bound by provisions in the co-insurer's insurance policy. UMS cites cases where courts have dismissed contribution actions where the defendant co-insurer had no coverage, or where plaintiffs did not comply with notice requirements in the policy. *See Continental Ins. Co. v. Highlands Ins. Co.*, 793 F.2d 225 (9th Cir. 1986) (finding that exclusion in underlying policy was a defense to the contribution action); *New York v. Blank*, 27 F.3d 783 (2d Cir. 1994) (finding that notice provision of the underlying policy defeated coverage and provided a defense). UMS further quotes an English marine insurance treatise to support its arguments:

> The underwriter who has paid a claim and is seeking contribution on the basis of double insurance can have no better rights against the other underwriter than those possessed by the assured.

*Templeman on Marine Insurance: Its Principles and Practice*, 405 (5th ed. 1981).

UMS reliance on the above authorities is misplaced. We agree that the terms of the defendant co-insurer's policy limit the rights of the plaintiff co-insurer in asserting a contribution

12

claim. The defendant can rely on its policy terms to show it provided no coverage and to show the "other insurance" provisions governing the apportionment among co-insurers in the event of multiple coverage.

> As the right to contribution arises because both the entity seeking contribution and the entity from whom it is sought are liable for the underlying obligation, it stands to reason that any fact or circumstance which would allow the latter entity to avoid liability for the obligation would preclude contribution. This opens the door to a wide range of claims attacking the validity of the policy as a whole, or its enforceability based on compliance with any number of conditions or contractual obligations.

15 Lee R. Russ, *Couch on Insurance* § 218:17 (3d ed. 1999). Thus, in defending a contribution action against a coinsurer, a defendant can rely upon provisions in its policy to show it had no coverage for the loss sued upon or how the loss should be allocated between multiple insurers. The forum selection clause in the UMS policy is not relevant to either of these questions. We therefore decline to extend the precedents cited by UMS to bind Adams to the forum selection clause in UMS's policy.

The district court correctly refused to enforce UMS's forum selection clause.

B

UMS further argues that venue is improper in this case because it does not comport with the venue provisions of the Brussels

13

Convention of 1968.[5]  Because UMS did not sufficiently raise this issue in the prior appeal the argument is abandoned and we will not address the merits of the issue here.

In UMS's first appeal to this court it challenged the district court's decision on venue only as it related to the forum selection clause.  Although it referred to the district court's rejection of UMS's Brussels Convention argument, it articulated no argument supporting reversal of that ruling.

Issues not raised or inadequately briefed on appeal are waived.  *See Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 483 n.5 (5th Cir. 2003) (issue not raised on appeal); *L & A Contracting Co. v. S. Concrete Servs., Inc.*, 17 F.3d 106, 113 (5th Cir. 1994) (finding that issue was not adequately briefed where no authorities were cited in a one page argument).  Because UMS did not make an argument challenging the district court's venue finding regarding the Brussels Convention this argument was waived.

IV.

UMS next challenges the district court's summary judgment apportioning payment of the loss between Adams and UMS according to their respective policy limits.  The district court's order apportioned the loss in a 4:1 ratio based on the UMS policy limit

---

[5]These venue rules have since been codified in the European Council Regulations.  Council Regulation 44/2001, 2001 O.J. (L 12).

of $20 million and the Adams $5 million limit.  UMS argues that the loss should have been apportioned based upon the value of the insured lost cargo.  Had the loss been apportioned in this manner Adams and UMS would have shared the loss equally, since the value of the insured lost cargo was the same and because it fell within each insurer's policy limit.

This Court reviews a district court's grant of summary judgment *de novo*, applying the same legal standards as the district court in determining whether summary judgment was appropriate. *United States v. Lawrence*, 276 F.3d 193, 195 (5th Cir. 2001) Questions of fact are viewed in the light most favorable to the nonmovant; questions of law, like the apportionment of liability between UMS and Adams in this case, are reviewed *de novo*.  *Id.*

The Duferco-UMS insurance policy provided an "other insurance" clause to dictate the mode of apportionment.  The policy stated:

**INSURANCE WITH VARIOUS INSURERS**

Article 9.  When for one and the same risk, several insurances with several insurers have been taken out separately–even by various contracting parties–Article 1910 of the Civil Code [of Italy] will apply.

Article 1910 of the Italian Civil Code provides:

**Insurance with more than one insurer.**

* * *

An insurer who has made payment has a right to recourse against the other insurers for a proportional contribution based on the indemnities owed in accordance with their respective contracts.  If one of the insurers

15

is insolvent, his share shall be divided among the others.

Adams policy contained no "other insurance" clause.

In support of its argument that the loss should be allocated according to the value of the cargo insured in each policy, UMS relies on the following phrase from art. 1910: "contribution based on the indemnities owed in accordance with their respective contracts." UMS argues that this means that apportionment is based upon the value of the insured cargo rather than the policy limits.[6] The district court disagreed.

In beginning its analysis the district court recognized the existence of the UMS "other insurance" clause and the absence of a similar clause in the Adams contract. Based upon the single "other insurance" clause the district court determined that it must give effect to that contractual provision. Dist. Ct. Op., June 3, 1998, at 10-11 (citing Barry R. Ostrager & Thomas R. Newman, *Handbook on Insurance Coverage Disputes*, § 11.03[b]). The district court then

---

[6]UMS did not make this argument in its response to Adams's motion for summary judgment regarding apportionment of loss. Instead, at the summary judgment stage, UMS argued that apportionment of loss should be based upon *policy limits* and that Adams policy limit was $80 million while the UMS policy limit was only $20 million. In its trial memorandum and motion for a new trial, after the district court had determined that Adams's policy limit was only $5 million, UMS changed its argument to the one it presents in this appeal, namely that apportionment should be based upon insured value and not policy limits. While we have concerns about whether this argument was properly raised below, we nevertheless address UMS's latter argument on its merits.

16

proceeded to interpret the "other insurance" clause, the relevant Italian Code article, and the policy as a whole and determined that the UMS-Duferco policy "appear[ed] to follow the majority rule of *pro rata* division based on the ratio which the individual insurer's limits bear to the sum of all available coverage." *Id.* at 11.

Contrary to UMS's arguments, the district court's decision to divide loss based upon policy limits was not based upon substantive American law. Instead the decision was based upon its interpretation of the UMS contract and Italian Code art. 1910 referred to in that contract. The phrase giving a coinsurer a "right to recourse against the other insurers for a proportional contribution based on the indemnities owed in accordance with their respective contracts" refers to the exposure each insurer has to the insured under their respective policies. The contract was the law between the parties regarding the apportionment of loss in instances of concurrent insurance. We agree with the district court's interpretation of the UMS-Duferco contract.

V.

Adams and AK Steel bring cross appeals against UMS related to the judgment against AK Steel and the apportionment of that award. "Of course, we review bench trial findings of fact for clear error; conclusions of law, *de novo*." *Baldwin v. Stalder*, 137 F.3d 836, 839 (5th Cir. 1998).

17

A.

Adams challenges the district court's order to split the tort award of $190,975.68 against AK Steel *pro rata* between Adams (20%) and UMS (80%). Adams asserts that UMS is not entitled to any portion of the award from AK Steel until UMS pays Adams for its share of the loss incurred by Duferco.

The district court reasoned that each insurer should recover against the tortfeasor, AK Steel, in the same percentage each was required to pay for the loss.

As a general rule "under the doctrine of equitable subrogation . . . where an insured is entitled to receive recovery for the loss from . . . the insurer and the tortfeasor, it is only after the insured has been *fully compensated* for all of the loss that the insurer acquires the right to subrogation[.]" 16 Lee R. Russ, *Couch on Insurance*, § 223:134, at 147–48 (3d. ed. 2000) (emphasis added); *see also* 6A John Alan Appleman & Jean Appleman, *Insurance Law and Practice*, § 4121, at 395 (1972) ("An insurer was not deemed to be subrogated to the rights of the insured unless it had *paid* the loss in full." (emphasis added)). UMS has made no payments to Duferco to compensate it for the lost steel. UMS therefore is not subrogated to Duferco's right to assert a claim against AK Steel and the district court erred in awarding any part of the judgment to UMS.

18

If UMS pays its share of the insured loss, it may well be entitled to an equitable credit for its share of the tort recovery. On remand the district court should give UMS an opportunity to satisfy Adam's judgment against it, and if it does so, the district court can give UMS an equitable credit for a portion of the tort recovery.

We therefore vacate the district court's award of approximately $151,000 to UMS and award the entire $190,975.68 to Adams. On remand the district court may conduct whatever proceedings it considers necessary to consider UMS's claim to an equitable credit once UMS pays or agrees to pay its share of the insured loss.

## B.

Defendant AK Steel argues that UMS would never be entitled to recover its share of the profits from the salvaged steel because AK Steel was an additional insured of UMS. According to AK Steel it is entitled to a credit for UMS's share of the approximately $191,000 and should, at most, be required to pay Adams its 20% share. We disagree.

AK Steel is correct that an insurer generally cannot subrogate against its insureds:

> This Circuit has overwhelmingly upheld the fundamental principle of insurance law which states that an insurer may not sue its own insured to recover under the insurance policy. An insurer cannot by way of subrogation recover against its insured or an additional

19

    assured any part of its payment for a risk covered by the
    policy.

*Peavey Co. v. M/V ANPA*, 971 F.2d 1168, 1177 (5th Cir. 1992)
(citations omitted).

But not all suits by an insurer against its insureds are
barred. An insurer may recover damages from an insured for losses
outside the policy. In particular an insurer may bring a
reimbursement action against its insured for recovered property or
an insurers overpayment for losses, even where a subrogation action
is forbidden. 16 Lee R. Russ, Couch on Insurance, § 226:4, at 15-
16 (3d ed. 2000) ("The importance of the various theories
supporting reimbursement lies in their ability to circumvent
significant obstacles encountered by an insurer seeking recovery
under subrogation. . . . For example, recovering funds from an
insured by means of reimbursement may be allowable even when the
recovery of the same funds under the theory of subrogation would be
barred by the rule that an insurer may not be subrogated to claims
against its own insured."); *see also id.* § 226:135, at 134 ("An
insurer may recover payments it has made for lost property if the
property is subsequently found, or the property is subsequently
delivered, and may similarly recover stolen property that has been
reacquired by the insured.")

This Court has clearly recognized an insurer's right to
recover against an insured for reimbursement:

While public policy does not allow an insurer to sue its

> own assured on the insurance policy, the law recognizes that there may be causes of action by an insurer outside the policy. . . . . Zurich's [the insurer] suit against Degesch [the assured] is not one of subrogation but one of reimbursement.

*Peavey*, 971 F.2d at 1177.  The district court decided and the parties have not challenged on appeal that Duferco was the owner of the lost steel and Adams paid Duferco for that steel.  AK Steel suffered no loss and was unjustly enriched at the expense of Adams by the conversion of the lost steel.  UMS, once it pays its share of the loss, is therefore entitled to recover in reimbursement against AK Steel even if AK Steel is an additional insured under the UMS policy.  Any recovery is outside the policy and unaffected by the general prohibition against insurers enforcing subrogation against their insureds.

VI.

Finally Adams challenges the district court's denial of attorney fees.

We review awards of attorneys fees under an abuse of discretion standard.  Underlying questions of fact are reviewed for clear error; questions of law, *de novo*.  *Jason D.W. v. Houston Ind. Sch. Dist.*, 158 F.3d 205, 208 (5th Cir. 1998) (*per curiam*).

According to the general "American Rule" applied in admiralty cases, attorney fees are not awarded absent a statutory or contractual authority.  *Alyeska Pipeline Serv. Co. v. Wilderness*

21

*Soc'y*, 421 U.S. 240, 268-69 (1975).  We find no reason to deviate from the American Rule in this case.


## VII.

For the reasons stated above, we affirm all features of the district court's judgment except in one respect.  We vacate the district court's award of a portion of the recovery against AK Steel to UMS and remand for the district court to award the entire recovery to Adams.  The district court can also consider UMS claim to an equitable credit if it pays its share of the insured loss.


AFFIRMED in PART; VACATED in PART; REMANDED.