# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 13, 2020

Lyle W. Cayce
Clerk

No. 19-50168

Sebastian Domingo Bacilio-Sabastian; Raul Us Castro; Wilder Xitumul-Garcia; Manuel Santiago-Laines,

*Petitioners—Appellants*,

*versus*

William P. Barr, Attorney General of the United States; Rose Thompson, Warden of the Karnes County Residential Center; Budd Ratliff, Acting Assistant Field Office Director for the San Antonio District of ICE; Daniel Bible, Field Office Director for the San Antonio District Office of ICE; Ronald D. Vitiello, Deputy Director and Acting Director of ICE; Chad F. Wolf, Acting Secretary, U.S. Department of Homeland Security; The GEO Group, Incorporated,

*Respondents—Appellees*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:18-CV-793

Before Higginbotham, Elrod, and Haynes, *Circuit Judges*.

Haynes, *Circuit Judge*:

No. 19-50168

Petitioners Sebastian Domingo Bacilio-Sabastian, Raul Us Castro, Wilder Xitumul-Garcia, and Manuel Santiago-Laines appeal the dismissal of their petitions for habeas corpus. For the following reasons, we AFFIRM.

## I.    BACKGROUND

Petitioners, each with his minor son, fled persecution in their home country of Guatemala. When they arrived in the United States, each Petitioner was detained by Immigrations and Customs Enforcement ("ICE") and separated from his son during detention. While detained and separated from their sons, each received written notice that they would be paroled into the United States. Petitioners were neither released from detention nor given notice that parole had been revoked. Instead, they were transferred to various locations before being detained at the Karnes County Residential Center in Karnes City, Texas. Two had their parole notices confiscated.

In August 2018, Petitioners filed their habeas petition in federal district court seeking habeas corpus relief, a writ of mandamus, and a declaratory judgment. More specifically, Petitioners claimed that their due process rights had been violated by failure to honor the parole notice, that federal statutes and regulations created a right to parole based on the parole notices they had received, that the parole notices should be honored under customary international law, and that a legitimate expectation of parole had been created.

Within two weeks after the petition was filed, ICE released Petitioners from custody but not on parole. The government then moved for dismissal, arguing that the district court lacked jurisdiction because the matter was moot. Petitioners opposed the motion to dismiss. Petitioners argued that the case was not moot since, having not been released on parole and thus being unable to accept employment, they continued to suffer adverse

consequences.  They also asserted that the district court had jurisdiction to address whether the revocation of parole had been in accordance with the Administrative Procedure Act ("APA").

Among other things, the district court determined that Petitioners' release from detention rendered the habeas petition moot.  The district court ordered that the government provide Petitioners or their attorneys with written notice that their parole had been terminated.  Upon receipt of compliance, it would grant the motion to dismiss.  In compliance with the order, the Assistant United States Attorney on this case sent a letter to Petitioners' attorneys, which purported to serve as notice of termination of parole.  The district court then dismissed the habeas petition.  Petitioners now appeal.

## II.  Discussion

We review de novo a district court's determination that a case is moot. *Bayou Liberty Ass'n v. U.S. Army Corps of Eng'rs*, 217 F.3d 393, 396 (5th Cir. 2000).

Mootness doctrine requires that, to show a case or controversy under Article III of the Constitution, "through all stages of federal judicial proceedings, trial and appellate[,] . . . parties must continue to have a personal stake in the outcome of the lawsuit." *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477–48 (1990) (internal quotation marks and citation omitted). To maintain a habeas case after release from incarceration, petitioners must show that they continue to suffer "collateral consequences." *See Carafas v. LaVallee*, 391 U.S. 234, 237 (1968).  In the criminal context, collateral consequences exist when, "[b]ecause of . . . disabilities or burdens which may flow from [a] petitioner's conviction, he has a substantial stake in the judgment of conviction which survives the satisfaction of the sentence imposed on him." *Id.* (cleaned up).

No. 19-50168

Petitioners argue that their inability to seek work authorization—which they could do if released on parole—is a collateral consequence that should allow them to maintain their petition.  We disagree for two reasons: First, we are not convinced that aliens who are released from ICE custody can maintain a habeas petition by showing collateral consequences. Second, even if they could demonstrate collateral consequences, they have not done so here because any work authorization is subject to U.S. Citizenship and Immigration Services ("USCIS") discretion.  Since we hold that Petitioners' habeas petition has become moot, we affirm.[1]

We do not think that the collateral consequences analysis used in the criminal context necessarily applies with the same force in the immigration context.  When an alien is released from ICE custody pending further immigration proceedings, no conviction exists to disable or burden that petitioner.  *See Carafas*, 391 U.S. at 237 (defining collateral consequences as "disabilities or burdens which may *flow from* [a] petitioner's *conviction*" (cleaned up) (emphasis added)).  To be sure, an alien awaiting immigration proceedings has fewer rights then a citizen or lawful resident: for example, like Petitioners here, the alien might not be able to seek work.  But the limitation on employment is based on their undocumented status, not, like a criminal case, on an underlying conviction that might be attacked in a habeas petition.  Since neither actual confinement nor an underlying conviction are the basis for Petitioners' employment obstacles, it appears that maintaining a habeas petition is not a viable means to obtain the relief that Petitioners seek.  Indeed, the Supreme Court has recently taken a narrow view of habeas

---

[1] During argument, counsel for Petitioners argued that, even if their habeas claim cannot proceed, they had raised viable APA and mandamus claims on appeal.  Petitioners' briefing focused solely on the habeas claim.  Because any other claims were inadequately briefed, they are waived.  *See Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 653 (5th Cir. 2004).

relief in the immigration context, which supports our reluctance to extend habeas relief to aliens who are released from detention. *See Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1963 (2020) (describing habeas in the immigration context as "a means to secure *release* from unlawful detention").

Even if habeas relief were available for collateral consequences on employment in an immigration context, it does not apply here. In the criminal context, limitations on employment have been held to be collateral consequences when a person's underlying criminal conviction bars him from certain employment. *See Carafas*, 391 U.S. at 237. Not all possible impacts on employment prospects count, though: "nonstatutory consequences"—like those "dependent upon the discretionary decisions made by an employer or a sentencing judge"—are generally not actionable collateral consequences. *Spencer v. Kemna*, 523 U.S. 1, 13 (1998) (cleaned up). Here, aliens on parole may apply for employment authorization, but approval of such authorization is subject to USCIS discretion. *See* 8 C.F.R. § 274a.12(c). Therefore, after a parolee gains the ability to seek work authorization, obtaining authorization remains dependent upon a USCIS determination. Any collateral consequence, then, is too attenuated for habeas relief.

For these reasons, therefore, we conclude that Petitioners' habeas claim is moot. Since their habeas claim is moot, and because Petitioners did not properly raise any other claim on appeal, we AFFIRM the judgment of the district court.

No. 19-50168

Patrick E. Higginbotham, *Circuit Judge*, dissenting:

As a result of the government's revocation of their parole, Petitioners are prevented from applying for employment authorization.[1] This renders them unable to seek employment. Because this adverse consequence is specific, concrete, and flows directly as a matter of law from the challenged government action,[2] I would hold that Petitioners' case is not moot. I would further hold that the district court is not prevented from reviewing the government's revocation of parole under 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) because its purported failure to comply with mandatory regulations was not a discretionary act.

I must disagree with the majority's view of the reach of habeas corpus. The Supreme Court did not speak to the scope of immigration habeas relief in *Department of Homeland Security v. Thuraissigiam*, focusing only on the Suspension Clause.[3] The habeas statute itself "does not limit the relief that may be granted to discharge of the applicant from physical custody. Its mandate is broad with respect to the relief that may be granted."[4]

The majority holds that Petitioners' inability to seek employment is a consequence of their undocumented status, not "an underlying conviction that might be attacked in a habeas petition." But this misunderstands the cause of Petitioners' inability to seek employment. It is not Petitioners' undocumented status itself but rather the underlying reason Petitioners remain undocumented—the government's revocation of their parole.

---

[1] 8 C.F.R. § 274a.12(c).

[2] *Spencer v. Kemna*, 523 U.S. 1, 9 (1998) (citing *Carafas v. LaVallee*, 391 U.S. 234, 237 (1968)).

[3] 140 S. Ct. 1959 (2020).

[4] *Carafas*, 391 U.S. at 239.

No. 19-50168

Because this revocation can be challenged in a habeas petition, I conclude that Petitioners' habeas action is a viable means for the relief they seek and find no reason to limit the collateral consequences doctrine within the immigration context.

The majority concludes that because Petitioners' work authorization is subject to USCIS discretion, its consequence is "too attenuated for habeas relief." Yet, its impact on Petitioners' employment prospects differs little from cases where the Supreme Court has found an adverse effect on employment to be a collateral consequence. In *Carafas v. LaVallee*, the Court found that the petitioner's inability to engage in certain businesses was a collateral consequence flowing from his conviction.[5] One of those businesses was trafficking in alcoholic beverages.[6] Reversing the petitioner's conviction only removed the prohibition, permitting the petitioner to apply for a liquor license, but he still needed the license to be approved before being able to engage in that business. Despite this attenuation, the Court found a collateral consequence. Likewise, in *Ginsberg*, the Court found it sufficient for collateral consequence purposes that the petitioner's conviction "might result in the revocation of [his] license" required to run his luncheonette business because a town ordinance provided that the Commissioner of Buildings "*may* suspend or revoke any license issued, in his discretion, for [] conviction of any crime."[7] In both cases, the Court found a collateral consequence although the petitioner's enjoyment of employment depended

---

[5] *Id.* at 237-38; *see also Fiswick v. United States*, 329 U.S. 211, 222 (1946) (finding that a non-citizen petitioner faced collateral consequences because his conviction may impede his ability to become a citizen "if [he] seeks naturalization" and, if naturalized, his conviction might result in the loss of certain civil rights).

[6] *Carafas*, 391 U.S. at 237 n.4 (citing New York Alcoholic Beverage Control Law, McKinney's Consol. Laws, c. 3—B, § 126).

[7] *Ginsberg v. State of NY*, 390 U.S. 629, 633 n.2 (1968) (emphasis added).

No. 19-50168

on the discretion of a third party. It follows that Petitioners' inability to seek work authorization from USCIS is a collateral consequence resulting from the revocation of parole status, and their petition is not moot.

There is no other jurisdictional obstacle to reaching the merits of Petitioners' case. The district court found that 8 U.S.C. §§ 1226(e) and 1252(a)(2)(B)(ii) foreclose jurisdiction to review the government's actions.[8] This was error. Challenges to "the extent of the Attorney General's authority" are outside the scope of these jurisdiction stripping provisions.[9] While the government has discretion to revoke Petitioners' status, it must abide the regulations controlling its exercise.[10] The government's "extent of that authority is not a matter of discretion."[11] Therefore, Petitioners do not challenge discretionary government action, and the district court can properly reach the merits of their case.

I respectfully dissent.

---

[8] Section § 1226(e) provides that "[t]he Attorney General's discretionary judgment regarding the [apprehension and detention of aliens] shall not be subject to review." 8 U.S.C. § 1226(e). Section § 1252(a)(2)(B)(ii) provides that "no court shall have jurisdiction to review . . . any other decision or action of the Attorney General or the Secretary of Homeland Security the authority for which is specified . . . to be in the discretion of the Attorney General or the Secretary of Homeland Security." 8 U.S.C. § 1252(a)(2)(B)(ii).

[9] *Zadvydas v. Davis*, 533 U.S. 678, 688 (2001); *see also Jennings v. Rodriguez*, 138 S. Ct. 830, 841 (2018).

[10] 8 C.F.R. § 212.5(e)(2)(i); *see also United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 267 (1954), *superseded in part by statute on other grounds as recognized in Thuraissigiam*, 140 S. Ct. 1959 ("[A]s long as the regulations remain operative, the Attorney General denies himself the right to sidestep" those regulations.).

[11] *Zadvydas*, 533 U.S. at 688.