# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 15-30690

DANNY PATTERSON,

> Plaintiff - Appellant

v.

AKER SOLUTIONS INCORPORATED; FMC TECHNOLOGIES, INCORPORATED; FMC EURASIA, L.L.C.; AKER SUBSEA AS,

> Defendants - Appellees

United States Court of Appeals
Fifth Circuit

**FILED**

June 13, 2016

Lyle W. Cayce
Clerk

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:13-CV-337

Before HIGGINBOTHAM, DENNIS, and CLEMENT, Circuit Judges.

EDITH BROWN CLEMENT, Circuit Judge:

In this personal injury suit arising out of events occurring in waters off the coast of Russia, Danny Patterson appeals the district court's dismissal of defendant Aker Subsea AS ("Aker Subsea"), for lack of personal jurisdiction. For the following reasons, we AFFIRM.

## I.

Patterson, a U.S. citizen, allegedly sustained a knee injury while working aboard the M/V SIMON STEVIN, a Luxembourg-flagged vessel that was located off the coast of Russia. Patterson was working for Blue Offshore Projects BV ("Blue Offshore") on a project to install subsea production

No. 15-30690

equipment in a gas and condensate field. While aboard the M/V SIMON STEVIN, Patterson claims that he was struck by a cable and was injured.

Patterson sued Blue Offshore and two other companies involved in the project, Aker Solutions, Inc. ("Aker Solutions") and FMC Technologies, Inc., in the Eastern District of Louisiana. Patterson alleged that the defendants' negligence caused his injuries. Patterson amended his complaint and added more defendants including Aker Subsea, FMC Kongsberg Subsea AS ("FMC Kongsberg"), and FMC Eurasia, LLC. Aker Subsea and FMC Kongsberg separately moved to dismiss for lack of personal jurisdiction. The district court allowed Patterson additional time to conduct jurisdictional discovery. After completion of the jurisdictional discovery, the district court found that neither specific nor general personal jurisdiction existed over Aker Subsea or FMC Kongsberg. Thus, it granted their motions and dismissed them from the suit.

Patterson sought to certify the district court's dismissal order as a final judgment under Federal Rule of Civil Procedure 54(b). Simultaneously, he appealed the dismissal to this court, arguing that the district court has general personal jurisdiction over both Aker Subsea and FMC Kongsberg. We stayed the appeal pending the district court's determination of the 54(b) motion. The same day, we granted Patterson's unopposed motion to dismiss FMC Kongsberg. After the district court certified its order as final, we lifted the stay. We now consider whether the district court erred in dismissing Aker Subsea under Rule 12(b)(2).[1]

---

[1] Because the district court certified its dismissal order as a final judgment, this court has jurisdiction over the appeal under 28 U.S.C. § 1291. *See Crowley Mar. Corp. v. Panama Canal Comm'n*, 849 F.2d 951, 953-54 (5th Cir. 1988) (holding that where a premature notice of appeal is filed, a subsequent Rule 54(b) certification is sufficient to validate the notice of appeal).

No. 15-30690

## II.

We review *de novo* the district court's Rule 12(b)(2) dismissal for lack of personal jurisdiction. *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002). "The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Id.* We "must accept the plaintiff's uncontroverted allegations, and resolve in [his] favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* (alteration in original) (internal quotation marks omitted).

## III.

Patterson argues that the district court erred by dismissing Aker Subsea because, in his view, it has sufficient contacts with the United States to establish general personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).[2] Patterson contends that over a three-year period, Aker Subsea entered into eleven secondment agreements[3] whereby it would assign its employees to an American affiliate in Houston, Texas. Under the secondment agreements, the employees sent to the United States remained employees of Aker Subsea. To Patterson, this shows continuous and systematic contacts in the United States sufficient to assert general jurisdiction over Aker Subsea.

Federal Rule of Civil Procedure 4(k)(2)[4] "provides for service of process and personal jurisdiction in any district court for cases arising under federal

---

[2] Patterson does not argue on appeal that specific personal jurisdiction exists over Aker Subsea.

[3] The term secondment means "the detachment of a person . . . from his regular organization for temporary assignment elsewhere." *Webster's Third New Int'l Dictionary* (10th ed. 2014). Here, the secondment agreements sent workers from Aker Subsea in Norway to Aker Solutions, an affiliate, in Houston. Aker Subsea would maintain all of the benefits of the seconded employee in Norway, including Norwegian Social Security, home country pension, and insurance. Aker Solutions was responsible for the day-to-day instruction of the seconded employee.

[4] Rule 4(k)(2) states that "[f]or a claim that arises under federal law, serving a summons or filing a waiver of service establishes personal jurisdiction over a defendant if:

law where the defendant has contacts with the United States as a whole sufficient to satisfy due process concerns and the defendant is not subject to jurisdiction in any particular state." *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 650 (5th Cir. 2004). Here, the dispute is whether Aker Subsea has sufficient contacts with the United States to satisfy due process.

"The due process required in federal cases governed by Rule 4(k)(2) is measured with reference to the Fifth Amendment, rather than the Fourteenth Amendment. That is, Rule 4(k)(2) requires us to consider [Aker Subsea's] contacts with the United States as a whole . . . ." *Submersible Sys., Inc. v. Perforadora Cent., S.A. de C.V.*, 249 F.3d 413, 420 (5th Cir. 2001). Thus, to assert general personal jurisdiction under Rule 4(k)(2), Aker Subsea's contacts with the United States must be so continuous and systematic as to render it essentially at home in the United States. *See id.*; *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) ("[T]he inquiry under [*Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)] is not whether a foreign corporation's in-forum contacts can be said to be in some sense 'continuous and systematic,' it is whether that corporation's 'affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the forum State.'").

The proper forum for exercising general jurisdiction over a corporation is one in which a corporation is fairly regarded at home. *Goodyear*, 564 U.S. at 924 (citing Brilmayer et al., *A General Look at General Jurisdiction*, 66 Tex. L. Rev. 721, 782 (1988) (identifying place of incorporation and principal place of business as paradigm bases for the exercise of general jurisdiction)). Both Aker Subsea's place of incorporation and principal place of business are in Norway.

---

(A) the defendant is not subject to jurisdiction in any state's courts of general jurisdiction; and (B) exercising jurisdiction is consistent with the United States Constitution and laws."

No. 15-30690

Thus, to exercise general jurisdiction here, these facts must yield what the Supreme Court has described as the "exceptional case."[5]

The record contains no evidence that Aker Subsea had any business contacts with the United States except for eleven secondment agreements. Sending eleven employees to the United States over a brief period does not rise to the level of making Aker Subsea at home in the United States. The Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case—*Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952)—and Aker Subsea's contacts with the United States do not come close to the level of contacts there.

In *Perkins*, the Court found that the defendant, a Philippine corporation, could be subject to general personal jurisdiction in Ohio based on its extensive contacts within the state. 342 U.S. at 448-49. Due to World War II, the corporation moved certain operations from the Philippines to Ohio. The corporation's contacts with Ohio included: maintaining an office, keeping company files there, corresponding from Ohio about business and employees, paying salaries to the company's president and two secretaries, maintaining company bank accounts, using an Ohio bank as a transfer agent for stock of the company, holding several directors' meetings, managing company policies concerning rehabilitation of company property in the Philippines, and sending funds to pay for projects in the Philippines. *Id.* at 447-48. Here, there is no evidence of contacts with the United States similar to the contacts in *Perkins*.

---

[5] *See Daimler*, 134 S. Ct. at 761 n.19 ("We do not foreclose the possibility that in an exceptional case, see, *e.g.,* [*Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437 (1952)] . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."); *see also Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 432 (5th Cir. 2014) (noting that "[i]t is . . . incredibly difficult to establish general jurisdiction in a forum other than the place of incorporation or principal place of business.").

There is no evidence that Aker Subsea maintained an office, bank accounts, or conducted any corporate business in the United States. Using *Perkins* as the benchmark of the "exceptional case" where it is appropriate to exercise general jurisdiction over a corporation outside of its principal place of business or place of incorporation, we hold that Aker Subsea's contacts fall well short of effectively operating its business within the United States. At most, Aker Subsea sent eleven of its employees to the United States when it entered into the secondment agreements with its affiliate.[6] These contacts are insufficient to make Aker Subsea essentially at home in the United States.

This court has declined to exercise general personal jurisdiction over a corporation where its most significant and continuous contact with the forum was having employees located there. *See Bowles v. Ranger Land Sys., Inc.*, 527 F. App'x 319, 321-22 (5th Cir. 2013). In *Bowles*, a Texas resident sued an Alabama corporation in Texas for an injury sustained from a car wreck with the corporation's employee in Kuwait. *Id.* at 320. The corporation moved to dismiss for lack of personal jurisdiction. *Id.* The district court examined the corporation's contacts with Texas and reasoned that those contacts were insufficient to subject the corporation to general personal jurisdiction in Texas. *Id.* Thus, it granted the motion. On appeal, this court agreed, finding that the corporation's contacts with Texas were insufficient to exercise general jurisdiction over it. *Id.* The contacts included the following: six employees of the corporation worked at two military bases in Texas; the corporation's employees sometimes worked at or participated in training programs at a British military contractor's facility located in Texas; a small number of employees of the corporation underwent processing at a U.S. military facility

---

[6] We assume, without deciding, that for purposes of this personal jurisdiction analysis sending an employee to the United States under a secondment agreement is the equivalent of sending an employee to work in the United States.

in Texas before traveling to overseas assignments; the corporation paid unemployment and franchise taxes in Texas; and the corporation's website could be accessed in Texas and contained email addresses for several employees of the corporation. *Id.* at 321. The court noted that the presence of employees was the corporation's most significant and sustained contact with Texas. *Id.* at 322. But this was not enough to establish general jurisdiction: "That a small number of [the corporation's] employees happen to live and work in Texas on projects related to [the corporation's] dealings with the military or with other defense contractors does not indicate a sustained business presence in the state." *Id.* This reasoning applies to the facts here. That a small number of employees of Aker Subsea were seconded to the United States to work for an affiliate does not establish that Aker Subsea has a sustained business presence here.

Additionally, the rare cases where this court has found general jurisdiction over a foreign defendant are distinguishable. In *System Pipe & Supply, Inc. v. M/V Viktor Kurnatovskiy*, 242 F.3d 322, 325 (5th Cir. 2001), the panel concluded that the plaintiff's factual basis for claiming general jurisdiction over the foreign defendant corporation, if established, would be sufficient to show national minimum contacts. Those contacts included the following: (1) the defendant's fleet of vessels regularly called at most major ports in over fifty countries, including the United States; (2) in 1993, the defendant established and began to advertise Azsco America Line to provide service for U.S. Gulf Ports to the Mediterranean and Black Seas; (3) the defendant maintained another line of vessels to carry cargo from the east coast to Israel; (4) at least one of the defendant's vessels had previously been detained in Texas; (5) the defendant's ship, the M/V VIKTOR KURNATOVSKIY, called and discharged the plaintiff's cargo at the Port of Houston; (6) since 1993, the defendant had been a named party in

approximately fifty actions in United States District Courts; and (7) the defendant had been a defendant in another suit maintained in the Southern District of Texas which was not dismissed for lack of personal jurisdiction. *Id.* Significant here, Aker Subsea has not had the degree of continuous and systematic contacts with the United States that the foreign defendant corporation had with the United States in *System Pipe*. There is no evidence in the record that Aker Subsea has regularly conducted business in the United States, advertised here, maintained assets here, or has been a party to litigation in United States courts.

In *Adams*, this court found that the defendant, a foreign insurer, had sufficient contacts with the United States to assert general jurisdiction over it under Rule 4(k)(2). 364 F.3d at 652. The defendant's contacts included the following: it had paid claims to numerous U.S. companies (155 in all from 1991 to 1994); it had covered numerous other U.S. companies which made no claims; and it had insured hundreds of shipments to the United States. Records showed that the defendant insured approximately 260 shipments to the United States between 1989 and 1995 for one company alone; 138 of these shipments were valued at over $130 million. *Id.* at 651. Even more, the defendant used and paid a number of individuals in the United States as claims adjusters, surveyors, investigators, and other representatives to enable it to conduct business in America. *Id.* Here, there is no evidence that Aker Subsea conducted any business in the United States, let alone the significant level of business conducted by the defendant in *Adams*.[7]

---

[7] Both *System Pipe* and *Adams* predate *Goodyear* and *Daimler AG*. Scholars have viewed the Court's recent personal jurisdiction decisions as part of an access-restrictive trend. *See, e.g.*, Arthur R. Miller, *Simplified Pleading, Meaningful Days in Court, and Trials on the Merits: Reflections on the Deformation of Federal Procedure*, 88 N.Y.U. L. Rev. 286, 304 (2013).

No. 15-30690

Exercising personal jurisdiction over Aker Subsea under Rule 4(k)(2) is appropriate only if its contacts with the United States as a whole are sufficient to satisfy due process concerns. Aker Subsea's limited contacts with the United States—eleven secondment agreements—are insufficient to satisfy due process concerns. Thus, exercising general personal jurisdiction over Aker Subsea would be inappropriate. AFFIRMED.