# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

April 30, 2021

Lyle W. Cayce
Clerk

No. 20-30382

STEPHEN DOUGLASS, *individually and as personal representative of* THE ESTATE OF SHINGO ALEXANDER DOUGLASS; DORA HERNANDEZ, *individually and as personal representative of* THE ESTATE OF NOE HERNANDEZ; LAN HUYNH, *individually and as personal representative of* THE ESTATE OF NGOC TRUONG HUYNH; DARROLD MARTIN, *individually and as personal representative of* THE ESTATE OF XAVIER ALEC MARTIN; ERIN REHM, *individually and as personal representative of* THE ESTATE OF GARY LEO REHM, JR.; LLOYD WAYNE RIGSBY, JR., *individually and as personal representative of* THE ESTATE OF DAKOTA KYLE RIGSBY; CARMEN SIBAYAN, *individually and as personal representative of* THE ESTATE OF CARLOS VICTOR GANZON SIBAYAN,

*Plaintiffs—Appellants*,

*versus*

NIPPON YUSEN KABUSHIKI KAISHA,

*Defendant—Appellee*,

CONSOLIDATED WITH

No. 20-30379

No. 20-30382 c/w

No. 20-30379

Jhon Alcide; Richard Allen-Easmon; Dustin Angle; Jesus Arguello; Valerie Arguello, Et al.,

*Plaintiffs—Appellants*,

*versus*

Nippon Yusen Kabushiki Kaisha,

*Defendant—Appellee.*

---

Appeals from the United States District Court
for the Eastern District of Louisiana
USDC Nos. 2:19-CV-13688 & 2:19-CV-13691

---

Before King, Elrod, and Willett, *Circuit Judges*.

Per Curiam:

Nippon Yusen Kabushiki Kaisha chartered a ship that collided with a U.S. Navy destroyer in Japanese territorial waters. The collision killed seven sailors, injured at least forty others, and prompted the two lawsuits consolidated before us on appeal. The district court dismissed the cases, concluding that personal jurisdiction, under Fed. R. Civ. P. 4(k)(2), over Nippon Yusen Kabushiki Kaisha could not be established. For the reasons that follow, we AFFIRM.

## I.

Defendant-appellee Nippon Yusen Kabushiki Kaisha ("NYK Line") was involved in the operation and navigation of its chartered ship that collided with the U.S.S. Fitzgerald, a U.S. Navy destroyer, in the territorial waters of Japan. The collision killed seven sailors and injured at least forty others. After the incident, two sets of plaintiffs filed suit against NYK Line in the U.S. District Court for the Eastern District of Louisiana. The *Douglass*

No. 20-30382 c/w
No. 20-30379

plaintiffs are personal representatives of the seven U.S. sailors killed. They filed wrongful death and survival claims under the Death on the High Seas Act, 46 U.S.C. §§ 30301-08. The many U.S. sailors who were injured in the collision, along with seventeen family members with consortium claims, sued separately as the *Alcide* plaintiffs. The plaintiffs-appellants in both cases asserted personal jurisdiction over NYK Line pursuant to Fed. R. Civ. P. 4(k)(2), alleging that, despite NYK Line's status as a foreign corporation, its substantial, systematic, and continuous contacts with the United States should make NYK Line amenable to suit in federal court.

NYK Line moved to dismiss for lack of personal jurisdiction under Fed. R. Civ. P. 12 (b)(2). The district court granted NYK Line's motions and entered identical judgments in both cases accordingly. The plaintiffs-appellants timely appealed, and those appeals were subsequently consolidated before us. We are asked to address whether the district court could constitutionally exercise personal jurisdiction over NYK Line. Because we are bound by the rule of orderliness, existing Fifth Circuit precedent leaves us with only one proper outcome, and we affirm.

## II.

Our review of a district court's Rule 12(b)(2) dismissal for lack of personal jurisdiction is de novo, and we apply the same standards as the district court. *Patterson v. Aker Sols., Inc.*, 826 F.3d 231, 233 (5th Cir. 2016) (citing *Revell v. Lidov*, 317 F.3d 467, 469 (5th Cir. 2002)).

## III.

### A. Personal Jurisdiction and Fifth Amendment Due Process

In deciding whether an exercise of personal jurisdiction over NYK Line is constitutional, we run up against two threshold questions. First, we have to establish which constitutional test governs our analysis. And, second,

once we have discerned which test governs, we must then decide how that test is applied. We begin by establishing that the Fifth Amendment's due process inquiry controls our analysis here. No one disputes as much. But some background will be helpful to understanding the answer to the second question—the crux of this dispute. That is, how the Fifth Amendment due process test is applied in the personal jurisdiction context, and whether—and to what extent—Fourteenth Amendment due process caselaw in that same context constrains a Fifth Amendment due process analysis.

### 1. *Discerning the Relevant Constitutional Test*

As with any personal jurisdiction analysis in federal court, we begin with Rule 4(k) of the Federal Rules of Civil Procedure. *Synthes (U.S.A.) v. G.M. Dos Reis Jr. Ind. Com de Equip. Medico*, 563 F.3d 1285, 1293 (Fed. Cir. 2009) ("Rule 4 is the starting point for any personal jurisdictional analysis in federal court."). This is so, because, usually, whether a "defendant is amenable to service" is a "prerequisite" to a court's exercise of personal jurisdiction. *See Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104-05 (1987) ("Before a federal court may exercise personal jurisdiction over a defendant, the procedural requirement of service of summons must be satisfied."). Here, NYK Line is a foreign defendant and not subject to jurisdiction in any state's courts of general jurisdiction, and the claims asserted against it arise under federal law. As a consequence, everyone agrees that NYK Line may be properly served, and hence personal jurisdiction can be established, only pursuant to Rule 4(k)(2). *See generally* Fed. R. Civ. P. 4(k)(2).

Rule 4(k)(2) was drafted in response to the Supreme Court's decision in *Omni Capital International v Rudolf Wolff & Co.*, 484 U.S. at 104. In *Omni*, the Supreme Court affirmed the Fifth Circuit's en banc ruling, concluding that a district court lacked personal jurisdiction over the defendants where

the case arose under federal law, the federal law at issue was silent as to service of process, and the long-arm statute of the state in which the district court sat did not reach the defendants. *Id.* at 100-01, 108.

In doing so, the Court recognized that its holding would result in a peculiar hiatus in the rules. *Id.* at 111. Although, under the Federal Rules of Civil Procedure as they then existed, it was proper to look to the state long-arm statute to determine whether service of process was authorized, this left private litigants unable to bring an action under federal law against a foreign defendant outside of the reach of the state long-arm statute. *Id.* Nevertheless, the Court reasoned that it was not its place to fashion a "narrowly tailored service of process provision, authorizing service on an alien in a federal-question case when the alien is not amenable to service under the applicable state long-arm statute." *Id.* Rather, the Court called for amending the Federal Rules to include such a provision to fill in this gap. *Id.* at 103.

The *Omni* decision spawned Rule 4(k)(2). Rule 4(k)(2) provides that, if the case is one "aris[ing] under federal law," federal courts have personal jurisdiction to the constitutional limit provided that no state could exercise jurisdiction. *See* Fed. R. Civ. P. 4(k)(2). An exercise of personal jurisdiction is "consistent with the United States Constitution," *id*, if it comports with due process, *see Omni*, 484 U.S. at 104. There are two due process clauses in the United States Constitution. One is part of the Fourteenth Amendment, and it is aimed at regulating the conduct of the several states. *See* U.S. Const. amend. XIV, § 1. Another is part of the Fifth Amendment, and it constrains federal authority. *See* U.S. Const. amend. V. As Rule 4(k)(2) is directed at federal courts and contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits, the constitutional limits contemplated by the rule flow from the Fifth Amendment's Due Process Clause. *See* Fed. R.

Civ. P. 4(k)(2) advisory committee's note to 1993 amendment (explaining that the Fifth Amendment, the basis of jurisdiction under Rule 4(k)(2), "requires that any defendant have affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party").

The plaintiffs-appellants asserted personal jurisdiction over NYK Line pursuant to Fed. R. Civ. P. 4(k)(2), and therefore, everyone agrees that any exercise of personal jurisdiction over NYK Line must comport with the Fifth Amendment's due process requirements.

### 2. *Fifth Amendment Due Process and Existing Caselaw*

This brings us to the core of this dispute. Having established that personal jurisdiction is only proper in this case if the Fifth Amendment due process test is satisfied, we must now decide how this test is applied. And, on this point, the parties disagree.

NYK Line argues that Fourteenth Amendment due process caselaw in this context constrains a Fifth Amendment due process analysis and that the jurisdictional test set forth in *Daimler AG v. Bauman*, 571 U.S. 117 (2014), is our guide. Plaintiffs-appellants, supported by distinguished amici,[1] argue to the contrary. Because we find plaintiffs-appellants' position persuasive, we explain their position in full here. Ultimately, however, as we explain below, we are bound by the rule of orderliness to resolve this case under *Daimler*.

The upshot of the plaintiffs-appellants' argument is this: The requirements of Fourteenth Amendment due process differ from those of the Fifth Amendment. Therefore, in deciding whether a court's exercise of

---

[1] Professors Helen Hershkoff, Arthur R. Miller, Alan B. Morrison, John E. Sexton, and Adam N. Steinman filed an *Amicus Curiae* brief in this case.

personal jurisdiction over a defendant comports with the Fifth Amendment's Due Process Clause, we ought not to turn to recent Supreme Court cases interpreting the Fourteenth Amendment specifically. Rather, we should look to a defendant's national contacts and follow the basic dictates of *International Shoe Co., v. Washington*, 326 U.S. 310, 319 (1945).[2] Under the proposed "national jurisdiction" test, the inquiry is whether a foreign (i.e. non-U.S.) defendant, sued on a federal claim and not amenable to suit in any state court, was doing systematic and continuous business in the United States, and whether the claim at bar was related to that business. This is why.

Save for the relevant sovereign, the Fifth and Fourteenth Amendments to the U.S. Constitution contain identically worded due process clauses. It stands to reason that if the Fourteenth Amendment's Due Process Clause requires consideration of minimum contacts and fairness concerns in the context of personal jurisdiction, *see Int'l Shoe*, 326 U.S. at 316, 319, so too does the Fifth Amendment's. This gets us to the question, then, of how these two factors translate from the Fourteenth Amendment's Due Process Clause to its Fifth Amendment counterpart.

The Supreme Court has opined and elaborated on the Fourteenth Amendment's due process requirements and not on the Fifth's. *See J. McIntyre Mach., Ltd. v. Nicastro*, 564 U.S. 873, 885 (2011) (plurality opinion);

---

[2] At first blush, it seems incongruous to apply *International Shoe* and not *Daimler*. After all, *International Shoe* is, too, a Fourteenth Amendment case. *See* 326 U.S. at 313. But the line drawn at *International Shoe* and its early progeny is not arbitrary. Presumably, the drafters of Rule 4(k)(2) crafted the rule against the background of jurisdictional doctrine as it existed in 1993. That doctrine was rooted in the jurisprudence of *International Shoe*, under which companies could be sued if they had "systematic and continuous" contacts with the forum-state. 326 U.S. at 320. The plaintiffs-appellants are not asking that none of the Supreme Court's existing decisions help guide the analysis. They only ask that the modern access-restrictive trend of more recent decisions, *see Patterson*, 826 F.3d at 234 n.5, be read to apply solely to state courts.

*see also Bristol-Myers Squibb Co. v. Superior Court of Cal.*, *S.F. Cnty.*, 137 S. Ct. 1773, 1784 (2017) (leaving open the Fifth Amendment question); *Omni*, 484 U.S. at 102 n.5 (stating that the court has no occasion to address the Fifth Amendment's applicability to personal jurisdiction through national contacts); *Asahi Metal Indus. Co. v. Superior Court of Cal., Solano Cnty.*, 480 U.S. 102, 113 n.* (1987) (same).

While the Fourteenth Amendment measures contacts with the state, the Fifth Amendment considers contacts with the entire United States. *See* FED. R. CIV. P. 4(k)(2) advisory committee's note to 1993 amendment. To the extent that the Fourteenth Amendment's Due Process Clause ties the definition of the minimum contacts to state sovereignty, the Fifth Amendment's clause should consider the sovereignty of the United States.

The Supreme Court made clear that state-sovereignty (i.e. federalism) concerns were central to its interpretation of the Fourteenth Amendment's Due Process Clause. For instance, in *Bristol-Myers Squibb v. Superior Court*, the majority opinion noted that the Fourteenth Amendment's Due Process Clause "acting as an instrument of interstate federalism," restrains a state from exercising jurisdiction in certain cases. 137 S. Ct. at 1788 (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 294 (1980)); *id.* (Sotomayor, J., dissenting) ("The majority's animating concern, in the end, appears to be federalism[.]"). The same state-sovereignty concerns were discussed in *Daimler*. In fact, the separate opinion in *Daimler* criticized the majority for "unduly curtail[ing] the States' sovereign authority to adjudicate disputes." *Daimler*, 571 U.S. at 157 (Sotomayor, J., concurring in the judgment).

But federalism concerns are not present in the Fifth Amendment context.[3] The Supreme Court plurality in *J. McIntyre Machinery v. Nicastro*, 564 U.S. at 873, explicitly endorsed the possibility of a different personal jurisdiction analysis for federal courts. Recognizing the implications of its sovereignty-based approach, the plurality wrote: "Because the United States is a distinct sovereign, a defendant may in principle be subject to the jurisdiction of the courts of the United States, but not of any particular State." *Nicastro*, 564 U.S. at 884.

The plaintiffs-appellants' proposed test, then, taking *Nicastro* at its word, shifts the focus away from federalism concerns and instead accounts for any sovereignty concerns that might arise in an international context. Just as under *Bristol-Myers Squibb* the way to account for state-sovereignty considerations was to ensure that sufficient minimum contacts with the state were tied to the incident at hand, 137 S.Ct. at 1783, the requisite minimum contacts with the United States must be so related to the claim at issue. That is, as amici put it, the court would ask "whether a non-U.S. defendant, sued on a federal claim and not amenable to suit in any state court, was doing systematic and continuous business in the United States, *and whether the claim was related to that business*."

Just as fairness concerns play a role in the Fourteenth Amendment due process analysis, fairness concerns suggest that the Fifth Amendment's clause should preclude foreign nonresident defendants with no ties to the United States from being called upon to defend suits in the United States.

---

[3] The Supreme Court must have recognized as much, for in its Fourteenth Amendment caselaw it explicitly stated that it was not addressing the question on appeal here. *Bristol-Myers Squibb*, 137 S. Ct. at 1784 (majority op.) ("[W]e leave open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court.") (citing *Omni Capital*, 484 U.S. at 102 n.5).

No. 20-30382 c/w
No. 20-30379

And this concern highlights an important reason to differentiate between the interpretation of the two clauses: the limited constitutional rights of foreign defendants. After all, constitutional protections for non-U.S. parties in U.S. courts differ from those afforded to U.S. citizens. *See, e.g.*, *Dep't of Homeland Sec. v. Thuraissigiam*, 140 S. Ct. 1959, 1981-83 (2020); *U.S. Agency for Int'l Dev. v. Alliance for Open Society Int'l, Inc.*, 140 S. Ct. 2082, 2086-87 (2020).[4]

Given these meaningful differences, we are persuaded that, in this context, the bounds of Fifth Amendment due process are likely not wholly defined by modern Fourteenth Amendment caselaw.[5]

Only one of our sister circuits has thoroughly analyzed whether, in this context, the Fourteenth Amendment and Fifth Amendment standards are the same. *See Livnat v. Palestinian Auth.*, 851 F.3d 45, 55 (D.C. Cir. 2017).[6]

---

[4] A "national jurisdiction" test would nevertheless employ a number of backstops to ensure fairness to the foreign defendant. For example, *International Shoe*'s requirement "that the maintenance of the suit does not offend traditional notions of fair play and substantial justice" would remain part of the calculus. 326 U.S. at 316.

[5] As plaintiffs-appellants argue, it is also true that if we assume specific and general jurisdiction are the only two available tests for personal jurisdiction under the Fourteenth Amendment, and that these two tests equally limit the Fifth Amendment's due process inquiry, Rule 4(k)(2) has a limited applicability. Under these circumstances, Rule 4(k)(2) would be effective only in the exceptional case where (1) a defendant had minimum contacts with a forum state that has a long-arm statute that stops short of the Constitution; (2) the defendant's contacts fall between the constitutional and statutory lines; and (3) no other state is available. But, of course, our interpretation of what the Constitution requires does not depend on that interpretation's effect on the rule. Rather, the meaning of the rule depends on the Constitution.

[6] To be sure, however, many have assumed without deciding, or otherwise concluded without explanation, that the two standards are the same. *See GCIU-Emp. Ret. Fund v. Coleridge Fine Arts*, 808 F. App'x 655, 665 n.3 (10th Cir. 2020) ("Because no party in the case at bar draws any distinction between the Fifth and Fourteenth Amendments with respect to the 'purposeful direction' and 'arising out of' requirements, we assume without deciding that these restrictions are the same under either Amendment.");

We find unpersuasive the D.C. Circuit's conclusion that Fifth Amendment due process standards must track those imposed by the Fourteenth Amendment. In part, the D.C. Circuit relies on its finding that "the Supreme Court [has] applied Fourteenth Amendment personal-jurisdiction standards in Fifth Amendment cases." *Id.* at 54 (relying on *Argentina v. Weltover, Inc.*, 504 U.S. 607 (1992)). This is not the case.[7]

The D.C. Circuit was also troubled by the fact that "contacts with the United States that would be insufficient under the Fourteenth Amendment might justify personal jurisdiction under the Fifth." *Id.* But a national jurisdiction test would not necessarily relax the due process inquiry; rather, it would simply shift its focus.[8] For these reasons, we find the plaintiffs-appellants' position to have merit.

---

*Waldman v. Palestine Liberation Org.*, 835 F.3d 317, 330 (2d Cir. 2016) (quoting *Chew v. Dietrich*, 143 F.3d 24, 28 n.4 (2d Cir. 1998)) (concluding that "the due process analysis [for purposes of the court's *in personam* jurisdiction] is basically the same under both the Fifth and Fourteenth Amendments"); *Schulman v. Inst. for Shipboard Educ.*, 624 F. App'x 1002, 1006 (11th Cir. 2015) (applying *Daimler* to a Rule 4(k)(2) analysis); *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 449 (6th Cir. 2012) (holding that the Fifth Amendment personal jurisdiction analysis "parallels" the Fourteenth Amendment analysis); *cf. Abelesz v. OTP Bank*, 692 F.3d 638, 660 (7th Cir. 2012) (finding "no merit" in the argument that invoking the Fifth Amendment "relaxes the minimum-contacts inquiry").

[7] *See Argentina*, 504 U.S. at 620 n.2. (noting explicitly that the personal jurisdiction question was before the Court only "as an aid in interpreting the direct effect requirement of the [Foreign Sovereign Immunities Act]" and that "[w]hether there is a constitutional basis for personal jurisdiction over [Argentina] [was] not before the Court as an independent question").

[8] Just because there are two different tests does not mean one is hard and one is easy—it is just a matter of shifting of focus. Analogously, we see this in the general versus specific jurisdiction inquiry in the Fourteenth Amendment due process caselaw. For example, establishing specific jurisdiction under the Fourteenth Amendment is not necessarily easier than establishing general jurisdiction, even though the same contacts that suffice to establish specific jurisdiction "would be insufficient," *Livnat*, 851 F.3d at 54,

No. 20-30382 c/w
No. 20-30379

## B. *Rule of Orderliness*

However persuasive we might find plaintiffs-appellants' position persuasive, in deciding whether modern Fourteenth Amendment caselaw controls, we confront another panel's opinion, *Patterson v. Aker Solutions, Inc.*, where the Fifth Circuit for the first and only time applied *Daimler* to resolve whether personal jurisdiction could be established under Fed. R. Civ. P. 4(k)(2). 826 F.3d at 234. The question we must address, then, is whether *Patterson*'s reliance on the Supreme Court's decision in *Daimler* compels us to rely on the same.

It is well-settled in this circuit that the rule of orderliness prevents one panel of the court from overturning another panel's decision, absent an intervening change in the law. *See Jacobs v. Nat'l Drug Intel. Ctr.*, 548 F.3d 375, 378 (5th Cir. 2008). Indeed, the rule of orderliness prevents a subsequent panel from declaring precedent void even where the reviewing panel conceives error in the examined precedent. *United States v. Traxler*, 764 F.3d 486, 489 (5th Cir. 2014). To the extent the parties ask us to disregard or modify Fifth Circuit authority, we are not permitted to do so. And it is *Patterson* that NYK Line argues controls this case, leaning on the rule of orderliness to convince us of the same.

Our facts are directly on point with *Patterson*'s. Like in this case, where the collision at issue took place on Japanese territorial waters, the complained-of injury in *Patterson* happened abroad, on a Luxembourg-flagged vessel off the coast of Russia. *Patterson*, 826 F.3d at 233. NYK Line, the defendant in our case, has its principal place of business and is

---

under a general jurisdiction inquiry. These are two different tests, and the tests' criteria are different because they are supported by different policy considerations. *See Daimler*, 571 U.S. at 157 n.10 (Sotomayor, J., concurring in the judgment) ("That is because the two forms of jurisdiction [(i.e. specific and general)] address different concerns.").

incorporated outside of the United States; the defendant in *Patterson* had both its place of incorporation and principal place of business in Norway. *Id.* at 234. In both cases, the plaintiffs alleged that personal jurisdiction over the foreign defendant was proper under FED. R. CIV. P. 4(k)(2) and that the defendant's contacts with the United States as a whole sufficed to satisfy the Fifth Amendment's due process requirements. *Id.* at 233-34.

To resolve whether personal jurisdiction could be constitutionally established over the defendant, *Patterson* applied the general jurisdiction test. *See id.* at 233 & n.2.[9] *Patterson* squarely held that "[u]sing [*Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437 (1952),] as the benchmark of the 'exceptional case' where it is appropriate to exercise general jurisdiction over a corporation outside of its principal place of business or place of incorporation," the defendant's contacts with the United States fell "well short of effectively operating its business within the United States." *Id.* at 235. To reach its holding, then, *Patterson* without a doubt relied on *Daimler*'s general jurisdiction test, which allows for a defendant to be amenable to personal jurisdiction in the "exceptional case" where its contacts with a forum are so continuous and systematic as to render it essentially at home. *See Daimler*, 571 U.S. at 139 n.19 (referencing *Perkins*, 342 U.S. at 437, as the example of an "exceptional case").

Of course, in resolving a case on point with *Patterson*, we would be free to disregard *Patterson*'s refences to *Daimler* and *Perkins* if these were *obiter dicta*. *See Netsphere, Inc. v. Baron*, 799 F.3d 327, 333 (5th Cir. 2015). But they are not. To decide whether the defendant's contacts were sufficient to render it essentially at home in the United States, the *Patterson* court relied explicitly

---

[9] In *Patterson*, whether specific jurisdiction could be properly established was not challenged on appeal. *See Patterson*, 826 at 233. The same is true in this case.

No. 20-30382 c/w

No. 20-30379

on *Perkins* as a benchmark and distinguished its facts therefrom. Ignoring *Patterson*'s reliance on *Perkins* would "seriously impair[] the analytical foundations of [*Patterson*'s] holding . . . ." *Int'l Truck & Engine Corp. v. Bray*, 372 F.3d 717, 721 (5th Cir. 2004) (quoting *Gochicoa v. Johnson*, 238 F.3d 278, 286 n.11 (5th Cir. 2000)). It is also clear that, throughout the *Patterson* opinion, references to *Daimler* and its general jurisdiction test are "explication[s] of the governing rules of law." *Id.* Such statements are not to be considered dicta under Fifth Circuit precedent and are therefore binding on this panel.[10] This is so whether we agree with *Patterson*'s logic or not. *Traxler*, 764 F.3d at 489.

---

[10] We recognize that where two previous holdings or lines of precedent conflict, the earlier opinion controls and is the binding precedent. *Baron*, 799 F.3d at 334 (citing *Rios v. City of Del Rio, Tex.*, 444 F.3d 417, 425 n.8 (5th Cir. 2006)). But arguments to the contrary notwithstanding, *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651-52 (5th Cir. 2004), does not control here. *Patterson* and *Adams* are not in conflict. They both turn to national contacts to decide whether personal jurisdiction could be constitutionally exercised. *Compare Patterson*, 826 F.3d at 234, *with Adams*, 364 F.3d at 650-51. *Patterson* first applies the law *Adams* establishes—that Rule 4(k)(2) requires consideration of "contacts with the United States as a whole." *Patterson*, 826 F.3d at 234 (quoting *Adams*, 364 F.3d at 650). Like *Adams*, *Patterson* next considers whether these contacts were "continuous and systematic." *See id.*; *Adams*, 364 F.3d at 651-52. Then, *Patterson* alone considers whether these contacts "render [the defendant] essentially at home in the United States." *Patterson*, 826 F.3d at 243 (citing *Daimler*, 571 U.S. at 139). *Adams* did not consider *Daimler*'s limitations. Nor could it. As *Patterson* correctly indicates, *Adams* predates *Daimler*. *See id.* at 237 n.7. *Patterson*'s application of *Daimler*, however, does not overturn or undermine *Adams*, and there is no true conflict between the two. Any decision to disregard *Patterson* on our part would amount to a finding that *Patterson* erroneously interprets and relies on *Daimler* to add gloss to *Adams*'s analysis. This conclusion alone does not allow us—a panel of this court—to declare that *Patterson* is not binding precedent. *See Jacobs*, 548 F.3d at 378 (citing *Grabowski v. Jackson Cnty. Pub. Defs. Office*, 47 F.3d 1386, 1400 n.4 (5th Cir. 1995) (Smith, J., concurring in part and dissenting in part)). Deciding not to follow *Patterson* would do nothing more than further erode the uniformity of the court's decisions on a question of exceptional importance. *Compare Patterson*, 826 F.3d at 234 (applying *Daimler* in the Rule 4(k)(2) context), *with Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 498 (5th Cir. 2018) (never citing to *Daimler* or *Patterson* to support the

14

No. 20-30382 c/w
No. 20-30379

And so, as we must, we follow *Patterson* and its application of *Daimler* in addressing whether the district court could constitutionally exercise personal jurisdiction over NYK Line. Bound by these constraints, we agree with the district court that it could not.

## C. *Personal Jurisdiction over NYK Line*

Federal Rule of Civil Procedure 4(k)(2) provides for federal long-arm jurisdiction when three requirements are met: (1) A plaintiff's claims arise under federal law; (2) The defendant is not amenable to suit in any state court of general jurisdiction; and (3) The plaintiff can show that the exercise of jurisdiction comports with due process. *See* Fed. R. Civ. P. 4(k)(2); *Patterson*, 826 F.3d at 234. The third requirement under Rule 4(k)(2)—the due process analysis—contemplates a defendant's contacts with the entire United States, as opposed to the state in which the district court sits. *See* Fed. R. Civ. P. 4(k)(2) advisory committee's note to 1993 amendment (explaining that the Fifth Amendment, the basis of jurisdiction under Rule 4(k)(2), "requires that any defendant have affiliating contacts with the United States sufficient to justify the exercise of personal jurisdiction over that party").

That the first two requirements of Rule 4(k)(2) are met is undisputed. The parties agree that NYK Line is not subject to the jurisdiction of any state court and that this case arises under federal law.[11] At issue here is only

---

proposition that the requirements of due process were met in a Rule 4(k)(2) analysis, noting that this point was undisputed). A faithful observance of the rule of orderliness leaves no occasion for us to choose to follow *Adams* in lieu of *Patterson*. *See Jacobs*, 548 F.3d at 378.

[11] This case involves claims arising under maritime law, and courts have observed repeatedly that maritime law is federal law and that federal law includes admiralty cases for the purposes of Rule 4(k)(2). *See World Tanker Carriers Corp. v. M/V Ya Mawlaya*, 99 F.3d 717, 723 (5th Cir. 1996).

whether an exercise of personal jurisdiction over NYK Line comports with due process.

Under *Patterson*, due process requires us to ensure that NYK Line's contacts "with the United States . . . [are] so continuous and systematic as to render it essentially at home." *Patterson*, 826 F.3d at 234 (citing *Daimler*, 571 U.S. at 139). "The Supreme Court has found a sufficient basis for the exercise of general jurisdiction over a non-resident defendant in only one modern case—[*Perkins*]—and [the defendant's] contacts with the United States [must] come close to the level of contacts there." *Id.* at 235.

NYK Line is incorporated and headquartered in Japan. Therefore, if NYK Line is to be subject to an exercise of general personal jurisdiction by a federal court, it must be because this is an "exceptional case." *See id.* at 234 & n.5 (quoting *Daimler*, 571 U.S. at 139 n.19).

The plaintiffs-appellants assert that, as part of its business, NYK Line engages in, *inter alia*, the following activities: It operates an air-cargo service at six U.S. airports and operates twenty-seven shipping terminals in U.S. ports. It also regularly calls on at least thirty U.S. ports, and dedicates seven of its vessels exclusively for the delivery of automobiles to the United States. NYK Line is licensed by the Federal Maritime Commission and is subject to its oversight. And shares of NYK Line stock are deposited at the Bank of New York Mellon and are available for purchase by U.S. investors. In short, NYK Line engages in vast amounts of shipping business in the United States, directly and through at least eleven wholly owned U.S. subsidiaries.[12] NYK

---

[12] On appeal, NYK Line contests whether its subsidiaries' contacts are relevant to establishing whether the requisite minimum contacts exist in this case. Because we conclude that, even considering these contacts, personal jurisdiction could not be properly established, we do not reach this issue.

No. 20-30382 c/w
No. 20-30379

Line clarifies that calls made to the United States ports, by vessels owned and chartered by it, from 2017-2019 represent between six and eight percent of all calls it made at ports worldwide for the same time period. NYK Line also highlights that only 24 of its 1,732 employees reside in the United States.

Using *Daimler*'s lodestar for the "exceptional case"—as did the court in *Patterson*—the district court correctly concluded that "NYK Line's contacts with the United States are not so continuous and systematic as to render [these facts] . . . exceptional." Unlike in *Perkins*, the United States could hardly be considered "the center of [NYK Line's] activities" or a "surrogate for [NYK Line's] place of incorporation or head office." *Daimler*, 571 U.S. at 130 n.8. As the district court aptly recognized "[a]ll of NYK Line's high-level decision making takes place in Japan, and port calls made to the United States represent just six to eight percent of all port calls made by NYK Line worldwide. [Further,] NYK Line's American employees represent less than 1.5 percent of all employees." Ultimately, NYK Line's contacts with the United States represent a small portion of its contacts worldwide. To be sure, NYK Line has considerable contacts with the United States. But these are not "so substantial and of such a nature" that NYK Line is essentially rendered at home in the United States. *Daimler*, 571 U.S. at 139 (quoting *Int'l Shoe*, 326 U.S. at 318); *see Patterson*, 826 F.3d at 234 n.5. We agree with the district court that personal jurisdiction over NYK Line cannot be constitutionally established, as we can do no other.

**IV.**

Bound by the rule of orderliness we agree with the district court that personal jurisdiction over NYK Line cannot be constitutionally established under existing Fifth Circuit precedent. We AFFIRM.

No. 20-30382 c/w
No. 20-30379

Jennifer Walker Elrod, *Circuit Judge*, joined by Don R. Willett, *Circuit Judge*, specially concurring:

I wholly concur in the well-reasoned majority opinion. I agree with the majority opinion that the case would be decided differently if we were not bound by *Patterson v. Aker Solutions, Inc.*, 826 F.3d 231 (5th Cir. 2016). I further agree with the majority opinion that *Patterson* muddled the Fifth Amendment due process inquiry by applying Fourteenth Amendment caselaw. Our interpretation of Fourteenth Amendment due process is shaped by federalism concerns that are irrelevant to the Fifth Amendment context. I write separately to urge our court to correct our course and undo the unnecessary limitation we have imposed on Federal Rule of Civil Procedure 4(k)(2).

Rule 4(k)(2) was promulgated and approved by Congress in response to a gap in federal jurisdiction that the Supreme Court identified in *Omni Capital International v. Rudolf Wolff & Co.*, 484 U.S. 97 (1987).[1] In that case, the Court declined to decide whether "a federal court could exercise personal jurisdiction, consistent with the Fifth Amendment, based on an aggregation of the defendant's contacts with the Nation as a whole, rather than on its contacts with the State in which the federal court sits." *Id.* at 102 n.5. Although noting that it was "not blind to the consequences" of holding that there was no basis to serve the foreign defendants in that case, the Supreme Court concluded that the responsibility to fill the jurisdictional gap

---

[1] The *Amicus Curiae* brief submitted by civil procedure professors Arthur R. Miller, Helen Hershkoff, John E. Sexton, Adam N. Steinman, and Alan B. Morrison outlines in greater detail the relevant history of how Rule 4(k)(2) "was passed in 1993 specifically to authorize federal courts, consistent with the Constitution, to exercise personal jurisdiction over federal claims that could not otherwise be heard in any state court."

"rests with those who propose the Federal Rules of Civil Procedure and with Congress." *Id.* at 111. Rule 4(k)(2) filled that gap.

In *Patterson*, our court unwittingly limited Rule 4(k)(2) by collapsing the Fifth Amendment and Fourteenth Amendment due process analyses. 826 F.3d at 234. In *Patterson*, the plaintiff did not contest the application of Fourteenth Amendment caselaw to explicate the Fifth Amendment standard, and thus the panel did not have the benefit of briefing about the important distinctions between Fifth and Fourteenth Amendment due process limitations on the exercise of personal jurisdiction.

However, there are important reasons to apply a jurisdictional framework that distinguishes between Fifth Amendment and Fourteenth Amendment due process standards.

To start, the federalism concerns that animate the Supreme Court's jurisprudence on the jurisdictional limitations of the Fourteenth Amendment's Due Process Clause are irrelevant in the Fifth Amendment context. Recently in *Ford Motor Co. v. Montana Eighth Judicial District*, the Supreme Court emphasized that "principles of 'interstate federalism'" are central to its analysis of Fourteenth Amendment due process limitations on personal jurisdiction. 141 S. Ct. 1017, 1030 (2021) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 293 (1980)). These federalism concerns are irrelevant in the Fifth Amendment context where federal law applies uniformly. All that matters is the sovereign authority of the United States itself. Simply put, it does not make sense to consider the sovereignty of individual states the exact same way we consider the sovereignty of the United States within the international community.

Recognizing this conceptual distinction, the Supreme Court has explicitly left "open the question whether the Fifth Amendment imposes the same restrictions on the exercise of personal jurisdiction by a federal court"

No. 20-30382 c/w
No. 20-30379

as the Fourteenth Amendment does on a state court. *Bristol-Myers Squibb Co. v. Superior Ct.*, 137 S. Ct. 1773, 1784 (2017).

Furthermore, we must be precise in expounding on the constitutional principles that underlie our exercise of personal jurisdiction or else we risk imposing restraints on federal courts' exercise of personal jurisdiction (and, relatedly, Congress's ability to authorize jurisdiction by statute) beyond what the Constitution requires and what Rule 4(k)(2) contemplates.

Indeed, this case illustrates how applying the wrong standard limits Rule 4(k)(2) precisely where it is intended to apply. The defendant here, NYK Line, regularly makes calls to at least thirty United States ports, operates twenty-seven shipping terminals in United States ports, and operates an air-cargo service at six United States airports. Shares of NYK Line stock are deposited at the Bank of New York Mellon and may be purchased by United States investors. NYK Line's consolidated revenue from its North American entities in the fiscal year ending in March 2019 was $1.47 billion. [2] Moreover, and importantly, as a consequence of its extensive business activity with the United States, NYK Line frequently litigates in United States courts—bringing over thirty lawsuits in federal district courts since 2010. Our decision today, compelled by *Patterson*, determines that a global corporation with extensive contacts with the United States cannot be haled into federal court for federal claims arising out of a maritime collision that killed seven United States Navy sailors.

The Supreme Court has not yet definitively outlined what constraints the Fifth Amendment's Due Process Clause imposes on federal courts'

---

[2] The district court denied jurisdictional discovery in this case, and thus plaintiffs made their *prima facie* case based primarily on publicly available information, some of which did not disaggregate NYK Line's United States data from its North America data.

No. 20-30382 c/w

No. 20-30379

exercise of personal jurisdiction. For now, we can only ensure that our precedent does not add to the doctrinal confusion, and I contend that *Patterson* does exactly that. This case presents a good vehicle for our *en banc* court to correct our course on Rule 4(k)(2) and apply Fifth Amendment due process precedent to cases where personal jurisdiction depends on satisfying Fifth Amendment due process requirements.