# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
September 7, 2022

Lyle W. Cayce
Clerk

No. 22-20065
Summary Calendar

---

Robert Manabu Torson,

*Plaintiff—Appellant*,

*versus*

Hyundai Oilbank Company Limited, doing business as Hyundai Oil Houston Office Company,

*Defendant—Appellee*.

---

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:21-CV-778

---

Before Stewart, Duncan, Wilson, *Circuit Judges*.

Per Curiam:*

In this appeal arising from a stockholder dispute, Robert Manabu Torson ("Torson") appeals the district court order granting Hyundai Oilbank Company Limited's ("Hyundai Oilbank") motion to dismiss.

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-20065

Because we hold that the district court properly declined to exercise personal jurisdiction over the defendant, we affirm.

## I.    Background

Hyundai Oilbank is a privately owned, for-profit, oil refining corporation based mostly out of South Korea. Hyundai Oilbank was formed and incorporated under South Korean law and maintains its principal place of business in Seosan, South Korea. Including its headquarters in Seosan, Hyundai Oilbank maintains a total of 37 offices in South Korea. These 37 offices hold over 99% of the corporation's approximately 2,000 employees. Hyundai Oilbank maintains six branch offices outside of South Korea, totaling 14 employees in all. These offices are spread out across the globe in a strategic manner to assist in Hyundai Oilbank's oil and gas operations. Hyundai Oilbank opened its sole United States office in Houston, Texas ("the Houston Office") on June 4, 2019.

The Houston Office is devoid of any high-level executives, officers, or directors. It is staffed with a single employee, a mid-level manager, Kwan Hwan Han ("Han"). Hyundai Oilbank registered its business with the Texas Secretary of State and created Han's role in Houston out of appreciation for the time difference between South Korea and the U.S. and the important role Texas plays in the global energy and gas industries. Han's primary duties are to research and report back real time updates regarding the American energy industry to the headquarters in Seosan. The Houston Office has no direct involvement in the purchasing or selling of materials in Texas. While Hyundai Oilbank has entered into roughly 60 contracts for oil produced in U.S. wells, none of these contracts were entered into in the U.S. or required payment to corporations in the U.S. The only contracts the Houston Office has entered into on behalf of Hyundai Oilbank are the sublease for the physical office space for Han and a commercial automobile insurance policy.

No. 22-20065

Torson is a United States citizen and resident of Hawaii. On August 13, 2018, Torson purchased 2,900,000 shares of Hyundai Oilbank from a Japanese citizen. Torson's purchase qualified him as a minority shareholder within Hyundai Oilbank. Since Hyundai Oilbank is not publicly traded, Torson sought to use the power obtained through his newly acquired shares to request relevant information to aid him in determining the value of his shares. Additionally, Torson requested Hyundai Oilbank recognize his shares as founder's shares, and that Hyundai Oilbank document that he is the shareholder in due course on its corporate stock ledger. To date, Hyundai Oilbank has not met Torson's demands. In response to Hyundai Oilbank's inaction, Torson filed suit in the federal district court for the Southern District of Texas, Houston Division, asserting a claim for conversion and seeking a declaratory judgment ordering Hyundai Oilbank to comply with his various requests.

Hyundai Oilbank moved to dismiss Torson's action under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction for forum non conveniens and under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. The district court granted Hyundai Oilbank's motion to dismiss, on grounds that it lacked personal jurisdiction, but declined to address the merits of the forum non conveniens issue and the Rule 12(b)(6) claim.

On appeal, Torson argues that the district court erred in holding that it lacked personal jurisdiction over Hyundai Oilbank for three reasons. First, Torson claims that Hyundai Oilbank's activities mirror those of cases where the Supreme Court has held that the exercise of general jurisdiction over foreign corporations was proper. Second, Torson argues that general jurisdiction exists under the exceptional case doctrine because the Houston Office's activities in Texas are so continuous and systematic that it is central to Hyundai Oilbank's success and thus qualifies as its U.S. principal place of

3

business. And third, Torson contends that general jurisdiction exists because he is unable to seek redress in any alternative U.S. jurisdiction.

## II.    Standard of Review

We review de novo a district court's determination that it lacks personal jurisdiction. *Sangha v. Navig8 ShipManagement Priv. Ltd.*, 882 F.3d 96, 101 (5th Cir. 2018). "The plaintiff bears the burden of establishing jurisdiction, but need only present *prima facie* evidence." *Patterson v. Aker Solutions Inc.*, 826 F.3d 231, 233 (5th Cir. 2016). We "must accept the plaintiff's uncontroverted allegations, and resolve in his favor all conflicts between the facts contained in the parties' affidavits and other documentation." *Id.* (internal quotation marks, alterations, and citation omitted). However, "such acceptance does not automatically mean that a *prima facie* case for [personal] jurisdiction has been presented." *Sangha*, 882 F.3d at 101.

## III.    Discussion

Personal jurisdiction exists over a non-resident defendant if "the state's long-arm statute extends to the defendant and exercise of such jurisdiction is consistent with due process." *Johnston v. Multidata Sys. Int'l Corp.*, 523 F.3d 602, 609 (5th Cir. 2008). "Because the Texas long-arm statute extends to the limits of federal due process, the two-step inquiry collapses into one federal due process analysis." *Id.*; *see also* TEX. CIV. PRAC. & REM. CODE § 17.042. Due process requires that the defendant have "minimum contacts" with the forum state, such that the defendant has "purposefully availed himself of the privilege of conducting activities within the forum state." *Id.* (quoting *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994)). The exercise of personal jurisdiction must be consistent with "traditional notions of fair play and substantial justice." *Id.*

Personal jurisdiction may be either specific or general. "A court may assert general jurisdiction over foreign corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). "General jurisdiction. . . will attach[] even if the nonresident defendant's contacts with the forum state are not directly related to the cause of action." *Wilson v. Belin*, 20 F.3d 644, 647 (5th Cir. 1994). Given the broad reach of general jurisdiction, we have held that the "continuous and systematic contacts test is a difficult one to meet, requiring extensive contacts between a defendant and a forum." *Johnston*, 523 F.3d at 609 (quoting *Submersible Sys., Inc. v. Perforadora Cent., S.A.*, 249 F.3d 413, 419 (5th Cir. 2001) (citation omitted)).

The Supreme Court has noted that in "exceptional case[s]" a corporate defendant's operations in another forum "may be so substantial and of such a nature as to render the corporation at home in that State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 n.19 (2014). This inquiry requires that we "apprais[e] a corporation's activities in their entirety" to evaluate whether this high burden has been met. *BNSF Railway Co v. Tyrrell*, 137 S. Ct. 1549, 1559 (2017). Furthermore, the inquiry remains consistent in dealings with states and foreign-country corporations. *Daimler*, 571 U.S. at 127.

Specific jurisdiction exists "over a nonresident defendant whose contacts with the forum state are singular or sporadic only *if* the cause of action asserted arises out of or is related to those contacts." *Int'l Energy Ventures Mgmt., L.L.C. v. United Energy Grp.*, Ltd., 818 F.3d 193, 212 (5th Cir. 2016) (emphasis in original). More specifically, specific jurisdiction is found where "a nonresident defendant has purposefully directed its activities at the forum state and the litigation results from alleged injuries that arise out

of or relate to those activities." *Walk Haydel & Assocs., Inc. v. Coastal Power Prod. Co.*, 517 F.3d 235, 243 (5th Cir. 2008) (internal quotations omitted).

Preliminarily, we acknowledge that Torson concedes that specific jurisdiction does not exist because none of the alleged injuries occurred in the forum state or relate to activities of the Houston Office. Instead, both parties focus on the issue of general jurisdiction.

First, we address Torson's argument that Hyundai Oilbank's activities are analogous to those set forth in *Perkins v. Benguet*, 342 U.S. 437 (1952). In *Perkins*, the president of a Philippines corporation moved business operations to Ohio in response to World War II. *Id.* In so doing, the president moved and kept business records, held directors' meetings, maintained substantial corporation accounts, and made all key business decisions in Ohio. *Id.* The Supreme Court held that "under the circumstances above recited, it would not violate federal due process for Ohio either to take or decline jurisdiction of the corporation in this proceeding." *Id.* at 448. Accordingly, if Torson's case is analogous to the facts set forth in *Perkins*, the district court may exercise general jurisdiction over his claims.

Here, the evidence demonstrates that Han's role and the Houston office is distinguishable from the circumstances described in *Perkins*. First, Han is a mid-level manager within Hyundai Oilbank. He is not a high-level executive, director, or board member, so he hardly possesses the powers exercised by the president in *Perkins*. Moreover, Torson fails to produce any evidence that any high-level employees have visited or made business decisions from the Houston Office. There is no evidence that key business records were moved from South Korea to the Houston Office, or that any funds are held in financial institutions in Texas. On this record, Torson has only shown that Hyundai Oilbank has an office in Houston, staffed with one

employee. These facts fall short of mirroring *Perkins* and provide no basis for general jurisdiction.

Next, we address Torson's argument that Hyundai Oilbank's activities out of the Houston Office are so continuous and systematic that it qualifies as a U.S. principal place of business. Alternatively, he contends that the Hyundai Oilbank's operations in Houston permit general jurisdiction under the "exceptional cases" doctrine. *Daimler*, 571 U.S. at 139 n.19. In support of his arguments, Torson relies primarily on *PetroSaudi Oil Services Ltd. v. Hartley*, 617 S.W.3d 116 (Tex. App. 2020). In *PetroSaudi*, an employee of PetroSaudi Oil Services Ltd. ("PetroSaudi") sued for injuries sustained on one of its vessels. PetroSaudi was incorporated in the Cayman Islands and had its principal place of business in London, England. *Id.* at 140. The corporation had a single U.S. office in Houston, Texas, owned by one of its subsidiaries. *Id.* The Texas court of appeals determined that it could exercise general jurisdiction over PetroSaudi because the "work performed in the Houston office was integral to the operation of the vessel, the success of which was the focus of PetroSaudi's business." *Id.* at 141. Specifically, the court noted that "[t]he Houston office was not merely incidental to PetroSaudi's work but was instead akin to 'a general business office' located in Texas." *Id.* "PetroSaudi's contacts with Texas were such that it was essentially 'at home' in Texas and . . . PetroSaudi had sufficient minimum contacts with Texas to support the exercise of personal jurisdiction." *Id.* at 141.!

To the contrary in Torson's case, the Houston Office is merely one of 37 total offices, has existed for only three years, and only employs Han, who has no authority to make any business decisions on behalf of Hyundai Oilbank in the U.S. or abroad. At best, the Houston Office is "merely incidental" to Hyundai Oilbank's work or overall success, and is not akin to a "general business office." *PetroSaudi*, 617 S.W.3d at 141. The most significant contact

No. 22-20065

Hyundai Oilbank has with Texas is that it has registered a business and provides an office for Han there. The Houston Office is of minor significance. Accordingly, we "decline[] to exercise general personal jurisdiction over a corporation where its most significant and continuous contact with the forum [is] having employees located there." *Patterson*, 826 F.3d at 235 (citing *Bowles v. Ranger Land Sys., Inc.*, 527 F. App'x 319, 321-22 (5th Cir. 2013)). Furthermore, because no "appraisal" of Hyundai Oilbank's activities in Houston indicates that their operation is substantial, *BNSF*, 137 S. Ct. at 1559, the Houston Office fails to qualify as an "exceptional case." *Daimler* 571 U.S. at 139 n.19.

Finally, we address Torson's contention that his inability to seek redress in an alternative U.S. forum should factor into our general jurisdiction analysis over Hyundai Oilbank. He argues that Hyundai Oilbank has limited suit in the U.S. to Texas by opening and maintaining a branch office in a single U.S. location. To that end, he maintains that the district court erred in its application of *Daimler* by not accounting for the lack of an alternative U.S. forum. We disagree.

In *Daimler*, the Supreme Court held that a federal court does not have general jurisdiction over a foreign corporation due to the contacts of its subsidiaries even if that subsidiary is "at home" in the plaintiff's desired forum. *Id.* at 134. Instead, the Court reaffirmed that the "paradigm all-purpose forums for general jurisdiction are a corporation's place of incorporation and principal place of business." *Id.* at 118-119 (quoting *Goodyear*, 564 U.S. at 924).

Here, the evidence reflects that Torson purchased his shares prior to Hyundai Oilbank ever opening an office in Houston. Moreover, he bought his shares from a Japanese citizen. Therefore, he was likely aware that any dispute over his purchase would occur internationally. The fact that a more

convenient forum has potentially surfaced since his purchase does not factor into our jurisdictional analysis. Consequently, this court will not use Torson's lack of an alternative U.S. forum as a basis for exercising general jurisdiction over Hyundai Oilbank.

The district court properly dismissed Torson's claims for lack of personal jurisdiction. *Sangha*, 882 F.3d at 101.

## IV.    Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment dismissing Torson's claims for lack of personal jurisdiction.